UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANTE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-7447 |
| | ) | |
| v. | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| ROBERT JEFFREYS, RICHARD STEMPINSKI, GAIL SESSLER, LAURA COSTABILE, RANDY PFISTER, and DARWIN WILLIAMS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dante Brown filed his three-count amended complaint against employees of the Illinois Department of Corrections ("IDOC") alleging that defendants violated the American with Disabilities Act ("ADA") and the Rehabilitation Act when they failed to provide him with reasonable accommodations to meaningfully participate in IDOC educational programs. Brown also alleges that defendants violated the Fourteenth Amendment's Equal Protection Clause when they denied him meaningful access to the IDOC educational programs by prioritizing placements of inmates with shorter sentences over those with life sentences. Before the Court is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part defendants' motion to dismiss.

## BACKGROUND

The following allegations are taken as true for the purposes of this motion. Brown, an inmate serving a life sentence at Stateville Correctional Center ("Stateville") since 2009, is diagnosed with and currently suffers from "severe language delays, dyslexia, and severe information processing deficits and attentional deviations." (R. 26, Am. Compl., ¶¶ 17-18.) Although he attended a high

school with a special education program, he did not graduate. In May 2012, Brown requested admission into IDOC's General Education Development ("GED") program.

The IDOC's GED program prepares inmates to take the GED exam and to enroll in post-secondary educational programs. As a prerequisite for participating in the GED program, all inmates are required to take the Test of Adult Basic Education ("TABE"). Generally, all inmates committed to IDOC for two or more years are required to take the TABE upon incarceration. However, those serving life sentences, like Brown, are an exception to this general rule and are not mandated to take the TABE. The IDOC guidelines state that inmates "who score below 6.0 on the TABE test are required to attend mandatory Adult Basic Education (hereinafter the "ABE program") prior to admittance in the GED program" as opposed to being directly enrolled in the GED program if they score 9.0 or above. (Am. Compl. ¶¶ 20-21.) The ABE program teaches inmates "basic reading, writing, mathematics, and life skills" to "prepare them for additional academic/vocational instruction and subsequent employment." (*Id.* at ¶ 22.)

Brown attempted to pass the TABE for the first time in May 2012 after requesting to participate in the GED program. He scored below a 6.0 average and was added to the mandatory ABE program waitlist. In 2015, while still on the waitlist, Brown began suffering from depression partly because he was unable to understand and assist the attorneys representing him in his criminal case. After waiting to be admitted into the mandatory ABE program for four years, Brown requested to take the TABE test for the second time in or around October 2016. After numerous attempts to pass the TABE test, on October 13, 2020, about eight years after his initial TABE attempt, Brown was officially enrolled in the mandatory ABE program.

Once Brown was enrolled in the ABE program, the educator, Ms. Johnson, assigned him three homework packets. At that time, in-person classes were put on pause. In lieu of in-person classes, Brown was set to receive an envelope every Tuesday with three homework packets to

2

complete on his own each week. He alleges that he was unable to complete the homework assignments in the allotted timeframe due to his severe learning disabilities. On October 23, 2020, Brown received a letter from Ms. Johnson informing him that she did not receive any of his assigned homework packets. In this letter, she also asked him to either complete and return his homework or to send a note explaining why he had not yet returned completed homework assignments. In response to Ms. Johnson's letter, Brown's cellmate helped him write letters explaining to Ms. Johnson and the then principal of the Stateville Education Department, Defendant Laura Costabile, that he required tutoring assistance to complete the homework due to his severe learning disabilities. Brown did not receive a response to those letters. He then submitted a letter to the IDOC's Superintendent of the School District about his inability to complete the ABE program without individualized tutoring assistance. As of June 2021, Brown has yet to receive any response or acknowledgement regarding his request for tutoring assistance and is no longer enrolled in the ABE program.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## DISCUSSION

*ADA/Rehabilitation Act – Counts I and II*

Brown alleges that defendants have violated Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which are governed by the same standards. *Bowers v. Dart*, 1 F.4th 513, 519 (7th Cir. 2021). To establish a violation under Title II of the ADA and the Rehabilitation Act, Brown must show that he is a "qualified individual with a disability," that he was "denied the benefits of the services, programs, or activities of a public entity," and that the "denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); 42 U.S.C. § 12132. The parties do not dispute that Brown is a qualified individual with a disability and that IDOC is a public entity. Therefore, the Court's analysis turns on whether Brown was denied the benefits of the ABE program by reason of his disability when defendants failed to provide him with a reasonable accommodation.

Title II of the ADA and the Rehabilitation Act both impose a duty on public entities to provide accommodations to people with disabilities if such accommodations are (1) necessary to ensure that they have meaningful access to the benefits of the program and (2) reasonable. *Alexander v. Choate*, 469 U.S. 287, 105 S. Ct. 712, 83 L.Ed.2d 661 (1985); *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 854 (7th Cir. 2018). Regarding the first prong, denying a reasonable accommodation request to participate in a public entity program is equivalent to denying access to the program altogether. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Defendants contend that Brown was not denied access to the ABE program because he was enrolled in it. They argue that Brown voluntarily opted out of participating in the program. Conversely, Brown alleges that he was unable to meaningfully participate in the program without a tutor or another reasonable accommodation because of his severe learning disability, not because of his lack of desire. Brown's letters addressed to IDOC staff informed defendants about his disability and his need for a tutor to

4

participate in the ABE program. According to Brown, defendants did not acknowledge Brown's letters, let alone address his request for a reasonable accommodation. Even if defendants found Brown's specific accommodation requests to be unreasonable, Brown claims that they did not attempt to accommodate him in any capacity. Because of the total lack of accommodation, Brown was never able to complete the ABE program homework and was ultimately unenrolled in the program without participating in it. Brown's inability to participate in the ABE program because defendants failed to provide him with a tutor or another reasonable accommodation effectively denied him access to the program on the basis of his severe learning disability. Therefore, Brown has sufficiently alleged the first prong of his ADA/Rehabilitation Act claim under the federal pleading standards by showing that accommodations were necessary for him to gain meaningful access to the ABE program.

Under the second prong of evaluating defendants' duty to accommodate Brown, assessing the reasonableness of an accommodation request is "highly fact-specific." *A.H. v. Illinois High Sch. Ass'n*, 881 F.3d 587, 594 (7th Cir. 2018) (citation omitted). It requires balancing both parties' needs by considering factors including costs in proportion to the efficacy of the accommodation, financial and administrative burdens, and the extent of required alteration to the nature of the program. *Id.* In his letters to IDOC staff, Brown requested either a tutor or an inmate tutor as a reasonable accommodation to allow him to participate in the ABE program. Defendants contend that Brown's requested accommodation of individualized tutoring assistance is a personal service that is not categorized as "reasonable." Defendants, however, do not address whether Brown's accommodation request is unreasonable in light of cost concerns, detrimental financial or administrative burdens, or drastic program changes that could result from Brown's requests. Instead, they assert that Brown does not suggest that such tutoring services are available. Contrary to defendants' argument—and construing the facts in Brown's favor—by arranging for a fellow

5

inmate to help him write two letters to IDOC staff, Brown has demonstrated that writing assistance from an inmate tutor is feasible and could reasonably accommodate his severe learning disability. Under the circumstances Brown has plausibly alleged that his request for a tutor or an inmate tutor was a reasonable accommodation request that defendants had a duty, but failed, to provide. As such, Brown has sufficiently alleged the second prong of his ADA/Rehabilitation Act claim under the federal pleading standards by demonstrating that his requested accommodation was reasonable.

Beyond alleging that defendants failed their duty to provide a reasonable accommodation, Brown must establish that defendants acted with deliberate indifference in order to receive compensatory damages. *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020). Deliberate indifference is shown if defendants "knew that harm to a federally protected right was substantially likely," and "failed to act on that likelihood." *Id.* (citing *Lacy v. Cook Cty.*, 897 F.3d 847, 862 (7th Cir. 2018)). Brown's letters to IDOC staff put defendants on notice that he was a qualified individual with a disability under Title II of the ADA and the Rehabilitation Act. The letters also informed defendants that Brown would be unable to participate in the ABE program without a reasonable accommodation. Brown argues that despite knowing all of this, defendants disregarded their duty to provide him with a reasonable accommodation as required by Title II of the ADA and the Rehabilitation Act. These circumstances plausibly suggest that defendants acted with deliberate indifference when failing to accommodate Brown. The Court therefore denies defendants' motion to dismiss Brown's ADA and Rehabilitation Act claims.

Also, as to the claims under Title II of the ADA or Section 504 of the Rehabilitation Act, there is no personal liability. *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015). Brown can only bring his Title II and Rehabilitation Act claim against a state agency or state official in his or her official capacity. The Court therefore dismisses all of the named defendants in their individual capacities in relation to Brown's ADA and Rehabilitation Act claims.

*Equal Protection – Count III*

The Equal Protection Clause of the Fourteenth Amendment provides that "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. It protects individuals, including prison inmates, from "intentional, arbitrary discrimination by government officials" when such treatment is unrelated to a legitimate penological interest. *Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 909-10 (7th Cir. 2017) (citation omitted); *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). Accordingly, Brown can successfully bring an equal protection claim if he establishes that (1) he has been "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000). These factors must be considered in light of the wide range of deference afforded to prison administrators in their adoption and execution of policies and practices, in addition to the presumption that prison classifications are rational and should be upheld whenever they can be conceivably justified. *See Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979); *Flynn*, 819 F.3d at 991.

In his amended complaint, Brown has plausibly alleged that defendants intentionally treated him differently from other inmates because of his out date, therefore, the Court turns to the second prong of his equal protection claim because it is dispositive. Brown contends that the ABE program waitlist policy is unrelated to a legitimate penological interest and only serves to irrationally and arbitrarily discriminate against inmates with longer sentences. Defendants state that the goal of the ABE program waitlist policy is to provide offenders preparing to re-enter society an opportunity to participate in the class prior to their release. Consequently, they argue that prioritizing ABE program waitlist placement based on inmates' outdates is rational and serves a legitimate purpose. Given the deference the Court must afford to prison administrators in their creation and

7

enforcement of prison classifications, defendants have articulated a rational justification for their ABE program waitlist policy even if it results in the inconsistent treatment of inmates. Because Brown has not plausibly alleged that defendants' ABE program waitlist policy lacks a rational basis or legitimate penological interest, the Court need not address defendants' personal involvement arguments at this time. Therefore, the Court grants defendants' motion to dismiss Brown's equal protection claim without prejudice. Brown is granted leave to amend his equal protection claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion to dismiss [31]. The Court grants plaintiff leave to file a second amended complaint by no later than November 12, 2021.

IT IS SO ORDERED.

Date: 10/15/2021       Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge