UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANTE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-7447 |
| | ) | |
| v. | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| ROBERT JEFFREYS, RICHARD STEMPINSKI, GAIL SESSLER, LAURA COSTABILE, RANDY PFISTER, and DARWIN WILLIAMS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dante Brown brought this lawsuit against employees of the Illinois Department of Corrections ("IDOC") alleging defendants violated the American with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act") when they failed to provide him with reasonable accommodations to meaningfully participate in IDOC's educational programs. Brown also alleged that defendants violated the Fourteenth Amendment's Equal Protection Clause. *See* 42 U.S.C. § 1983. On October 15, 2021, the Court granted in part and denied in part defendants' first motion to dismiss and granted Brown leave to file a Second Amended Complaint in relation to his Equal Protection claim.

Before the Court is defendants' motion to dismiss Brown's newly-alleged Equal Protection claim in his Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part defendants' motion to dismiss all of the named defendants except Robert Jeffreys, the Acting Director of IDOC, in his official capacity. The Court denies the remainder of defendants' motion.

**Background**

Brown is an inmate serving a life sentence at IDOC's Stateville Correctional Center. From a

young age, Brown had school-identified learning disabilities and spent a large part of his formal education in special education programs. In May 2004, Brown was diagnosed with, and still suffers from, "severe language delays, dyslexia, and severe information processing deficits and attentional deviations." Although he attended a high school with a special education program, he did not graduate. In May 2012, Brown requested admission into IDOC's General Education Development ("GED") program.

The GED program prepares inmates to take the GED exam and to enroll in post-secondary educational programs. As a prerequisite for participating in the GED program, inmates are required to take the Test of Adult Basic Education ("TABE"). In general, inmates sentenced to two or more years are required to take the TABE upon incarceration. However, those serving life sentences, like Brown, are an exception to this general rule and are not mandated to take the TABE. Moreover, the IDOC guidelines state that inmates "who score below 6.0 on the TABE test are required to attend mandatory Adult Basic Education ("ABE program") prior to admittance in the GED program." The ABE program teaches inmates "basic reading, writing, mathematics, and life skills" to "prepare them for additional academic/vocational instruction and subsequent employment."

Brown attempted to pass the TABE for the first time in May 2012 after requesting to participate in the GED program. He scored below a 6.0 average and was added to the mandatory ABE program waitlist. On October 13, 2020, about eight years after his initial TABE attempt, Brown was officially enrolled in the mandatory ABE program. Once Brown was enrolled in the ABE program, an educator assigned him three homework packets. At that time, in-person classes were put on hold. Instead of in-person classes, Brown was to receive an envelope every Tuesday with three homework packets to complete on his own each week. Brown contends that he was unable to complete the homework assignments in the allotted time due to his severe learning disabilities. On October 23, 2020, Brown received a letter from the ABE educator informing him

2

that she did not receive any of his assigned homework packets. In this letter, she also asked him to either complete and return his homework or to send a note explaining why he had not yet returned completed homework assignments. In response, Brown's cellmate helped him write letters explaining that he required tutoring to complete the homework due to his severe learning disabilities. Brown alleges that he did not receive a response to those letters. He then submitted a letter to IDOC's Superintendent of the School District about his inability to complete the ABE program without individualized tutoring assistance. As of June 2021, Brown has yet to receive any response or acknowledgement regarding his request for tutoring assistance and is no longer enrolled in the ABE program.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

In the October 2021 ruling on defendants' first motion to dismiss, the Court determined Brown had plausibly alleged his claims under Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Court clarifies that these claims only against

defendant Robert Jeffreys, the Acting Director of IDOC, in his official capacity because these claims are necessarily against IDOC. *See Jaros v. IDOC*, 684 F.3d 667, 670 n.2 (7th Cir. 2012). Meanwhile, the Court will not entertain defendants' additional arguments in relation to Brown's ADA and Rehab Act allegations because it has already determined that Brown plausibly alleged these claims in ruling on the first motion to dismiss. Defendants do not get a second bite at the apple.

Turning to Brown's allegations in Count III, the Equal Protection Clause protects individuals, including prison inmates, from "intentional, arbitrary discrimination by government officials" when such treatment is unrelated to a legitimate penological interest. *Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 909-10 (7th Cir. 2017) (citation omitted); *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016) (per curiam). Brown can successfully bring an Equal Protection claim if he establishes that (1) he has been "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000). These two factors must be considered in light of the wide range of deference afforded prison administrators in their adoption and execution of security policies and practices and should be upheld whenever they can be justified. *See Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979); *Flynn*, 819 F.3d at 991.

In his second amended complaint, Brown alleges that defendants' policy of prioritizing placement of inmates with shorter outdates on the ABE waitlist results in unequal treatment. Indeed, in the October 2021 ruling, the Court concluded that Brown had plausibly alleged that defendants intentionally treated him differently than other inmates because of his outdate. In that ruling, the Court, however, concluded that Brown had failed to plausibly allege the second prong of his Equal Protection claim, namely, that there was no rational basis for the difference in his treatment.

4

Brown alleges that the ABE program's waitlist policy is unrelated to a legitimate interest and only serves to irrationally and arbitrarily discriminate against inmates with longer sentences. Brown further maintains that while it is true that courts must afford prison administrators wide-ranging deference in the adoption of policies to preserve institutional order and discipline, the deference is not absolute. Indeed, as the Seventh Circuit has explained, although "courts must afford substantial deference to prison administrators on matters of institutional security," that "latitude is not boundless: defendants still must present evidence 'demonstrating a specific security concern that bears a nexus to the prohibited conduct.'" *Miller v. Downey*, 915 F.3d 460, 465 (7th Cir. 2019) (citation omitted).

Construing his allegations and all reasonable inferences in his favor, Brown has plausibly alleged defendants' rationalization that inmates with longer sentences will not benefit as much from education as those with shorter sentences is not a legitimate penological interest. The fact that defendants believe the goal of the waitlist policy is to provide offenders preparing to re-enter society an opportunity to participate prior to their release does not vitiate Brown's allegations nor speak to any security or safety concerns.

Nevertheless, defendants contend Brown has failed to allege he is a member of an identifiable minority and that his membership in that minority was the cause of the differential treatment. Defendants' argument is misplaced because Brown is bringing a class-of-one Equal Protection claim, and thus he need not allege that he is a member of a protected class. *See 145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771 (7th Cir. 2021). Defendants also argue that Brown has not alleged that defendants intentionally discriminated against him. Again, defendants' argument ignores that Brown is bringing a class-of-one Equal Protection claim, which only requires that defendants intentionally treated him differently from other inmates and there was no rational basis for the

5

difference in treatment. *See Hinterberger v. City of Indianapolis,* 966 F.3d 523, 530 (7th Cir. 2020). Brown has plausibly alleged these two requirements under the federal pleading standards.

Last, defendants' personal involvement arguments are of no moment because Brown's claims are against defendant Robert Jeffreys, the Acting Director of IDOC, in his official capacity. Personal involvement is only relevant to claims brought against a defendant in her individual capacity. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation") (internal citation marks omitted). In addition, because 42 U.S.C. § 1983 does not authorize awards of damages against states, Brown can only seek injunctive relief against IDOC. *Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018).

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss all of the named defendants except Robert Jeffreys, the Acting Director of IDOC, in his official capacity. The Court denies the remainder of defendants' motion to dismiss [38].

IT IS SO ORDERED.

Date: 3/25/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge