IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANTE BROWN,<br><br>        Plaintiff,<br>v.<br><br>LATOYA HUGHES, in her capacity as Acting Director of Illinois Department of Corrections,<br><br>        Defendant. | Case No. 20 C 7447<br><br>Honorable Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dante Brown, who is currently incarcerated, asserts that he was subject to disability discrimination by the Illinois Department of Corrections.[1] He argues that the Department of Corrections failed to provide him a reasonable accommodation that would allow him to meaningfully participate in its education program, in violation of the Americans with Disabilities Act (Count I) and the Rehabilitation Act (Count II). Brown also alleges that the Department of Corrections violated the Fourteenth Amendment's Equal Protection Clause (Count III) based on irrational and arbitrary discrimination against inmates with longer life sentences via its education program's waitlist. For the reasons explained below, there are genuine disputes of material facts about whether Brown was disabled, whether the requested accommodation of a tutor was reasonable, and whether the Department was required to provide the tutor or if that would fundamentally alter the education program. However, Brown has failed to create a genuine dispute

---

[1] Brown's Second Amended Complaint [37] was dismissed as to all named defendants except Robert Jeffreys, in his official capacity as Acting Director of the Illinois Department of Corrections. *Brown v. Jeffreys*, 2022 WL 888947, at *1 (N.D. Ill. Mar. 25, 2022). Since then, Latoya Hughes has taken over as Acting Director of the Department of Corrections. Pursuant to Federal Rule of Civil Procedure 25, the Court orders substitution of the proper defendant, Latoya Hughes. Fed. R. Civ. P. 25(d). Thus, Latoya Hughes is substituted as Defendant for Robert Jeffreys.

of material fact and judgment may be entered as a matter of law as to the Fourteenth Amendment claim. Accordingly, the Court denies the Department of Corrections' motion for summary judgment as to Counts I and II and grants the motion for summary judgment as to Count III.

**Factual Background**

The Court construes the evidence in the summary judgment record and draws all reasonable inferences in Brown's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Brown is an individual in custody of the Illinois Department of Corrections serving a life sentence without the possibility of parole. PRDSOF ¶¶ 1, 10.[2] He contends that he is disabled, which the Department disputes. Brown was enrolled in special education programs starting around age 11 or 12. *Id.* at ¶ 9. He was also given a psychoeducational evaluation in connection with his criminal trial. *Id.* at ¶ 7; DRPSOAF ¶ 3.[3] That evaluation screened Brown for disabilities and found the following:

> (1) mental retardation (2-3%) of the population, a developmental disability characterized by subaverage intellect paired with adaptive skills deficits which originate prior to age 18 (per the AAMR – American Association on Mental Retardation, 2002); (2) attentional irregularities associated with Attention Deficit/Hyperactivity Disorder (ADD/ADHD, incidence uncertain) and (3) Specific Learning Disability (4-6% of students), defined by an imbalance between potential and actual achievement which is caused by internal processing failures.

---

[2] The Court has taken the facts from the parties' Local Rule 56.1 statements. Unless otherwise noted, the above facts are not in dispute. The Court cites to Defendant's LR 56.1 statement of facts as "DSOF" and Plaintiff's response to Defendant's LR 56.1 statement of facts as "PRDSOF," Plaintiff's Statement of Additional Facts as "PSOAF," and Defendant's response to Plaintiff's statement of additional fact as "DRPSOAF."

[3] Defendant objects to the foundation of the medical report and to the fact that the cited material contains and relies on hearsay. Subject to these objections, Defendant admits the underlying facts. The document is an individual assessment report dated May 22, 2004, performed by Nancy Cowardin, Ph.D. in connection with Brown's criminal case. While Defendant is correct in arguing that inadmissible hearsay cannot be considered on a motion for summary judgment, *Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 942 (7th Cir. 2012), they are incorrect that this medical report is based on or contains inadmissible hearsay. Federal Rule of Evidence 803 lays out exceptions to hearsay including statements made for medical diagnosis or statements that describe medical history. Fed. R. Evid. 803(4). These facts are deemed admitted over Defendant's objection.

PRDSOF ¶ 7; DRPSOAF ¶ 3. This evaluation report also noted that the learning disability diagnosis was especially probable and pervasive considering the dyslexia which continually impacted Brown's ability to process symbolic material. PRDSOF ¶ 7; DRPSOAF ¶ 4.[4] As a result of his difficulties, Brown is unable to read and write. PRDSOF ¶ 5. Brown's desire to increase his knowledge while incarcerated led him to seek enrollment in the Department of Corrections' education courses. PRDSOF ¶ 5; DRPSOAF ¶ 10.

The Department of Corrections offers adult basic education courses to individuals in custody. PRDSOF ¶ 11. Placement in these education courses is determined by numerous factors, including taking a test and meeting certain eligibility criteria. *Id.* at ¶ 12; Ill. Admin. Code tit. 20, § 405.20(c) (1994). The test most incarcerated individuals take is the test of adult basic education. PRDSOF ¶ 12. Depending on how an individual scores, they are placed on waitlists for mandatory education courses, regular education courses, or the GED. *Id.* at ¶¶ 12-13. The Department of Corrections also reviews "the committed person's composite scores on achievement tests, the safety and security of the facility or any person, staff recommendations, requirements for admission to specific programs, administrative concerns, and the committed person's institutional behavior, educational record, projected release date, and medical and mental health status" when determining placement in the education courses. Ill. Admin. Code tit. 20, § 405.20(c); PRDSOF ¶¶ 12-13, 15-18. The consideration includes whether an individual should be placed in a course based on prior recent discipline, if two inmates have a "keep separate from" designation in their records, or if an inmate will be released soon. PRDSOF ¶¶ 13, 15-16.

---

[4] Defendant raises the same objections to the medical report in response to both paragraph three and four. For the reasons outlined in footnote three, the facts are deemed admitted over Defendant's objection.

Because there are a limited number of instructors and caps on class size, the Department of Corrections keeps a waitlist for individuals interested in participating in the education courses who are unable to enroll at that time. *Id.* at ¶¶ 13, 17-18. The waitlist is generated using a program based on information inputted by facility officials. *Id.* at ¶ 14.[5] The Department of Corrections changed the waitlist policy to sort the waitlist based on inmate release date because of staffing levels and to decrease recidivism. DRPSOAF ¶¶ 37-38.[6]

Brown initially took the placement test in 2012 and his score placed him in the range for the mandatory education class. PRDSOF ¶¶ 12, 19. It was not until October 2020, amid the COVID-19 pandemic, that he was enrolled in the mandatory education course. *Id.* at ¶ 20. During this time, the Department of Corrections' facilities were on an administrative lockdown and, like many educational institutions, in-person instruction was paused. *Id.* at ¶¶ 21-22. Individuals enrolled in the education programs were instead given homework packets to complete. *Id.* at ¶ 22. These packets were not only how teachers continued providing educational instruction but also how teachers determined attendance. *Id.* at ¶¶ 22-24. When an individual failed to complete a homework packet, they were sent a letter, and if no response was given regarding why the homework packet was missed, the individual was considered "absent." *Id.* at ¶¶ 24-25. After his

---

[5] The parties agree that the waitlist is generated based upon information inputted from facility officials but disputes other portions of paragraph fourteen. PRDSOF ¶ 14. The fact that information is inputted by facility officials is corroborated by the deposition of the adult basic education program administrator, Laura Costabile, who testified that she inputted the test scores into a computer program to generate the placement waitlist. Doc. [109-2] at 61:11-62:7.

[6] Defendant objects to paragraph 37 and 38 noting that the "cited material does not support the factual assertions and relies on hearsay," but subject to the objection, admits that the policy changed due to staffing levels and to decrease recidivism. DRPSOAF ¶¶ 37-38. The cited material includes a deposition from Maria Miller who stated that it was her understanding from an email that "the idea behind the [policy] change [wa]s to be able to serve those that are going to be released sooner because of staffing levels and hopefully to help with their recidivism." Doc. [113-12] at 38:16-39:7. This fact is supported by a letter from Defendant to Plaintiff noting that the goal of the education program's waitlist "is to provide offenders that are preparing to re-enter society an opportunity to participate in the class prior to their release." Doc. [113-6]. These facts are deemed admitted over Defendant's objection.

initial enrollment, Brown was given homework packets but did not complete them due to his severe learning disabilities, causing the teacher to reach out. *Id.* at ¶¶ 27-28; DRPSOAF ¶ 16. Brown, with the help of a fellow inmate, responded to the teacher's letter noting that he was functionally illiterate, required a special education tutor (teacher) to help him with basic academic skills, and requested that he be assigned a tutor of some kind to assist him. PRDSOF ¶ 29; DRPSOAF ¶ 18.[7]

Upon receipt of Brown's letter, the instructor and education facility administrator of the program met to discuss next steps. DRPSOAF ¶¶ 18, 20, 22.[8] They concluded that Brown's letter indicated that he was unable to participate in the education program independently. *Id.* at ¶ 22. No other options, such as having Brown's cellmate assist him, were discussed. *Id.* at ¶ 24. However, both parties agree that tutoring services were previously available, through the Chaplain's office via inmate tutors. *Id.* at ¶ 36.[9] Brown was thus removed from the program and placed back on the waitlist until in-person instruction recommenced. *Id.* at ¶ 26; PRDSOF ¶ 32. In-person instruction at the Department of Corrections' facilities did not resume until November/December 2021. PRDSOF ¶ 34. However, it was not until August 15, 2023, that Brown was placed back into an in-person mandatory education course. *Id*. at ¶¶ 36-37. As a result of the Department of Corrections conduct, Brown filed this action in December 2020 and litigation ensued.

## Discussion

Brown brings three causes of action in this case: (1) violation of the Americans with Disabilities Act for failing/refusing to provide a reasonable accommodation that allowed access to

---

[7] Both parties agree that the letter was written by another inmate and agree on its contents, but dispute remaining allegations in these paragraphs. The agreed facts are all that is considered by the Court.

[8] As in footnote seven, the parties agree that there was a meeting and that it was concluded that Brown could not complete the program independently. The remaining disputed facts are not considered.

[9] As in footnote seven and eight, the parties agree tutoring services were available at one point through the Chaplain's office and that there were inmate college graduate tutors available post-pandemic. The remaining disputed facts are not considered.

the educational program; (2) violation of the Rehabilitation Act for failing/refusing to provide a reasonable accommodation that allowed access to the educational program; and (3) violation of the Equal Protection Clause pursuant to 42 U.S.C. § 1983 for intentionally discriminating against inmates with longer or life sentences. The Department of Corrections moves for summary judgment on all three counts.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249.

### Count I and II: Failure to Accommodate[10]

Brown asserts that the Department of Corrections failed to accommodate his learning disability. Under the Americans with Disabilities Act, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Americans with Disabilities Act covers state institutions including prisons. *Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998). Public entities are obligated to provide reasonable accommodations for disabled individuals to ensure they have access to the benefits of programs, services, and activities. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 35.130(b)(7)(i). These reasonable modifications are required

---

[10] The parties agree that the analysis of the Rehabilitation Act claim is the same as the analysis of the Americans with Disabilities Act. *See Jaros v. Illinois Dep't of Corrs.*, 684 F.3d 667, 671-72 (7th Cir. 2012). Thus, the Court addresses these counts together.

"unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). Determining the reasonableness of a particular accommodation, especially in the prison context, is highly fact specific. *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001).

To prove a *prima facie* case for Counts I and II, Brown must prove that: (1) he was a qualified individual with a disability; (2) he was excluded from or denied benefits of the services, programs, or activities of a public entity or otherwise subject to discrimination; and (3) the discrimination was because of his disability. *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018). The Department of Corrections asserts it is entitled to judgment as a matter of law because: (1) Brown did not qualify as an individual with a disability; (2) Brown was not denied access to the adult basic education program due to his disability; (3) the accommodation requested by Brown, a tutor, was not reasonable; (4) the Department was not required to provide a reasonable accommodation because it would fundamentally alter the education program; and (5) Brown was not entitled to compensatory damages. Upon review of the record, there are questions of material fact regarding whether Brown was disabled, whether the requested accommodation of a tutor was reasonable, and whether the Department was required to provide the tutor or if it would fundamentally alter the adult basic education program. The Court does not address the remaining arguments as these are reasons enough to deny the motion for summary judgment as to Counts I and II.

The Court first addresses the Department of Corrections' argument that Brown is not disabled. An individual has a disability if they have (1) a physical or mental impairment that substantially limits a major life activity; (2) record of such impairment; or (3) are regarded as having an impairment. 42 U.S.C. § 12102(1). Major life activities include learning, reading,

concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). The Department of Corrections argues in its opening brief that there is no evidence of a specific learning disability nor evidence that Brown was regarded as having a disability. As Brown notes, the record includes material facts that dispute these claims. The parties agree that Brown was unable to read and write, diagnosed with mental retardation, a developmental disability, attentional irregularities associated with attention deficit/hyperactivity disorder, and a learning disability. In an evaluation conducted in connection with his criminal trial, the doctor also found that Brown's learning disability diagnosis was especially probable considering Brown's dyslexia. The Department admits these facts in its Local Rule 56.1 statement and does not raise further arguments on this point in its reply briefing. Thus, the summary judgment record creates factual questions on whether Brown had a mental impairment that limited his ability to learn, concentrate, and think.

Further, Brown contends that the Department of Corrections regarded him as having a disability as exhibited by *Miller v. Illinois Dep't of Transp.* 643 F.3d 190, 195 (7th Cir. 2011). To be regarded as having a disability, Brown must show that the Department of Corrections believed, rightly or wrongly, that he had an impairment that substantially limited one or more major life activity, such as the ability to learn or think. *Id.* It is undisputed that Brown's cellmate wrote a letter to his adult basic education class instructor and the education facility administrator. This letter stated that Brown "is a functional illiterate when it is concerning educational skills or reading, writing, math, spelling etc, and requires a special education tutor." DRPSOAF ¶ 18. After reading this letter, the program instructor and administrator concluded that Brown would not be able to complete the education program independently. The Department of Corrections also admits that Brown was unable to complete the homework packets "[i]n light of his severe learning disabilities." *Id.* at ¶ 16. Again, the Department of Corrections admits these facts in its Local Rule

8

56.1 statement, and this evidence raises questions about whether the Department regarded Brown as having a disability.

Turning to the issue of reasonable accommodation, Brown requested that the Department of Corrections provide him with a special education tutor or teacher to help Brown with basic academic skills and requested an inmate or other tutor to assist him with his homework packets. The reasonableness of an accommodation with regards to prison programs is considered in light of the overall institutional requirements, including security and safety concerns, and administrative exigencies. *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020). The Department of Corrections argues that the tutor accommodation was not reasonable due to the COVID-19 pandemic, which prohibited in-person instruction. The parties agree that no in-person class instruction was occurring during the administrative lockdown. However, the parties also agree that at some point tutoring services were available through the Chaplain's office, that there were inmate college graduate tutors available post-pandemic, and that inmates were assigned to act as "education workers" to assist around the classroom. DRPSOAF ¶¶ 35-36. Brown points to these tutoring services to exhibit that the request for a tutor was a reasonable accommodation. Brown also notes that the Department of Corrections did not discuss these options or having Brown's cellmate assist him. *Id.* at ¶ 24. Defendant disputes that these tutoring services were available during the administrative lockdown. Brown and the Department disagree, using the record evidence, about whether these tutoring services, either in-person or remote, were available as an accommodation when Brown requested, creating a material dispute of fact.

The Department of Corrections also contends that a reasonable accommodation was not required. A reasonable modification is required "unless the public entity can demonstrate that making the modification would fundamentally alter the nature of the service, program, or activity."

9

28 C.F.R. § 35.130(b)(7)(i). The Supreme Court in *PGA Tour, Inc. v. Martin* explored the notion of what constitutes a fundamental alteration to an activity. 532 U.S. 661 (2001). In reaching its conclusion, the Supreme Court noted that a modification is fundamental if: (1) it altered the essential aspect of the activity, such that it would be unacceptable even if it affected all participants equally, or (2) if it gave the disabled individual an advantage that fundamentally changed the character of the program. *Id.* at 682-83. In *Martin*, the Supreme Court analyzed whether the use of golf carts for a disabled individual fundamentally changed the essence of golf competitions. *Id.* In that case, the facts had already been resolved and weighed by the trial judge and reviewed by the appellate court. *Id.* at 672-73, 683-89. The Supreme Court was therefore able to find that allowing carts did not fundamentally change golf competitions because the essential character of golf was making shots and golf carts were often encouraged. *Id.* at 683-89.

    *Martin* instructs the Court to find that genuine questions of material fact remain regarding whether providing Brown a tutor would fundamentally alter the Department of Corrections' adult basic education program. The Department takes the stance that allowing one-on-one tutoring changes the fundamental nature of the education program from a classroom setting with multiple students. Naturally, Brown takes the opposing view and points to evidence that there was already one-on-one assistance from teachers when the classes were in-person and that there have been various tutoring resources available. DRPSOAF ¶¶ 35-36. As discussed above, Brown asserts tutoring resources were available from the Chaplain's office or from other inmates, while the Department of Corrections asserts that the tutoring resources were not available during COVID-19. Like *Martin*, a jury must weigh this conflicting evidence and resolve whether the tutor modification would be fundamental. As material questions of fact remain regarding whether allowing one-on-one tutoring changes an essential aspect or the character of the adult basic

10

education program, and on whether tutoring resources were available, summary judgment is inappropriate for Counts I and II.

### Count III: Equal Protection Clause

Brown's final count alleges that the Department of Corrections violated the Fourteenth Amendment. The Equal Protection Clause forbids a state actor from arbitrarily treating one group worse than another group. *Clark v. Reed*, 772 F. App'x 353, 354 (7th Cir. 2019). Brown contends that, by maintaining a policy of prioritizing placement in education classes by release date, the Department of Corrections discriminated against individuals with longer or life sentences. Brown further asserts that there was no legitimate penological interest or rational basis for this decision. The Department of Corrections counters that Count III fails because: (1) it is not a cognizable class of one action; (2) there is a rational basis for any unequal treatment; and (3) there is no available remedy.

The Department of Corrections asserts that the decision to place individuals in adult basic education courses is discretionary and not conductive to a class of one challenge. Class of one equal-protection doctrine recognizes that the Equal Protection Clause may give rise to a cause of action "where the plaintiff does not allege membership in a class or group if the plaintiff can show that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013) (cleaned up). Class of one claims cannot be used to challenge discretionary government actions, such as the decision whether to initiate prosecution or whether to grant parole. *Katz-Crank v. Haskett*, 843 F.3d 641, 649 (7th Cir. 2016); *Adams v. Meloy*, 287 F. App'x 531, 534 (7th Cir. 2008).

The Seventh Circuit's reasoning in *Clark v. Reed* and *Adams v. Meloy* are instructive in determining discretion for prisoner class of one claims. 772 F. App'x 353; 287 F. App'x 531. Both cases found a prisoner was unable to bring a class of one challenge under the equal protection clause. The plaintiff in *Clark* alleged that a prison official fired him from the prison's bakery to send a message to other inmates. 772 F. App'x at 354. The Seventh Circuit concluded that class of one claims are not cognizable in the prisoner-employment context because employers have broad discretion regarding how they treat employees. *Id.* at 354-55. Further, courts defer to the discretion of prison officials regarding operation of their institutions. *Id.* at 355. The plaintiff in *Adams* similarly challenged his denial of parole arguing that he was treated unfairly because he killed a police officer. 287 F. App'x at 534. The Seventh Circuit noted that the parole board's inherent discretion necessitates that some prisoners will receive more favorable treatment. *Id.* As a result of the discretion, the class of one claim had no merit. *Id.*

Likewise, here, the inherent discretion that the Department of Corrections has regarding how it operates and determines enrollment in its programs, such as the adult basic educational course, means that individuals will receive different treatment. Placement in the Department of Corrections' education courses is determined by taking a test and meeting certain eligibility criteria. Eligibility for enrollment considers "the committed person's composite scores on achievement tests, the safety and security of the facility or any person, staff recommendations, requirements for admission to specific programs, administrative concerns, and the committed person's institutional behavior, educational record, projected release date, and medical and mental health status." Ill. Admin. Code tit. 20, § 405.20(c). The parties agree that the Department of Corrections considers factors such as whether an individual should be placed in a course based on prior recent discipline, if two inmates have a "keep separate from" designation in their records, or

12

if an inmate will be released soon. This discretion to consider and weigh different factors in determining course enrollment necessitates that some individuals will receive more favorable treatment. In other words, weighing these different factors inherently includes judgment and will result in different treatment. Brown responds that his equal protection claim is not challenging an individual discretionary employment decision and thus not discretionary. This argument misses the mark. Class of one claims are incognizable against any discretionary government action, not only employment decisions. *Katz-Crank*, 843 F.3d at 649; *Adams*, 287 F. App'x at 534. Thus, judgment can be entered as a matter of law on Count III.

Even if the Court were to find a cognizable equal protection claim, it would fail because there is a rational reason for the different treatment. "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being treated alike, under like circumstances." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008) (cleaned up). To succeed on Count III, Brown must prove that: (1) prioritization of inmates with shorter release dates resulted in unequal treatment; and (2) the classification does not bear a rational relationship to a legitimate state purpose. The parties admit there is prioritization of the waitlist based on release date. And the Department of Corrections does not raise arguments on the unequal treatment prong. Thus, the Court focuses on if there is a rational relationship to a legitimate state purpose for the unequal treatment.

Prison officials do not violate the Equal Protection Clause when they treat prisoners differently based on a legitimate penological concern. *French v. Owens*, 777 F.2d 1250, 1256 (7th Cir. 1985). This is a lenient standard that mandates that a prison's policy must be upheld if the court can reasonably conceive of any justification for the policy. *Shaw v. Smith*, 206 F. App'x 546,

548 (7th Cir. 2006). If the government provides a rational basis for the challenged action, that ends the matter. *Glover v. Dickey*, 668 F. App'x 158, 160 (7th Cir. 2016).

The Seventh Circuit in *Glover v. Dickey* found that giving preference to inmates with impending release dates constituted a rational reason for a decision not to admit a plaintiff to a prison program. 668 F. App'x at 160. In *Glover*, preference in a sex-offender treatment program was given to inmates with impending release dates. *Id.* Here, prior to 2012 the Department of Corrections sorted the education class waitlist by intake date but decided to change the policy due to staffing levels and to decrease recidivism. One of the goals was to give inmates with impending release dates the chance to participate in hopes to better prepare them to re-enter society. These reasons are rational bases, as noted by the Seventh Circuit in *Glover*, for the challenged action.

Brown asserts the Seventh Circuit decision in *French v. Heyne* supports the finding that there is at least a genuine issue of material fact regarding whether there is a rational basis for the policy. 547 F.2d 994, 998-99 (7th Cir. 1976). The *French* case is inapposite to the facts at issue here. In *French*, plaintiff challenged the limited access into the prison's vocational training programs. *Id.* at 996-97. The Seventh Circuit found that there had "been no investigation into the purpose for limiting" the program. *Id.* at 998-99. Nor had the parties pointed to other court cases explaining a potential basis for the distinction. *Id.* at 999. Thus, the Seventh Circuit could not determine if the limitation was due to a small budget, desire to give access to individuals who could derive the most benefit, or to penalize people with longer sentences. *Id.* As no evidence had been put forward in *French*, the Seventh Circuit could not "indulge in supplying an imaginary purpose or basis for the classification." *Id.* In direct contrast to this case, the Department of Corrections provided multiple undisputed and rational reasons, including the desire to decrease

14

recidivism by allowing access to individuals who could most benefit from the education program and staffing levels.

Brown also contends that the change in the Department of Corrections' waitlist policy was for political reasons. This does not affect the Court's analysis. A rational basis exists as long as the court can identify a conceivable basis for the different treatment even if not the actual basis for the actions. *Chi. Studio Rental, Inc. v. Illinois Dep't of Com. & Econ. Opportunity*, 940 F.3d 971, 980 (7th Cir. 2019). There is no question that the record evidence shows that the waitlist policy was put in place due to staffing levels and in order to decrease recidivism. These are rational reasons no matter if there are also potential underlying political reasons. Brown does not put forth any evidence calling into question the Department of Corrections motives or proffer other explanations that would rebuke the rational reasons put forth.

The final argument put forward by the Department of Corrections is that Brown has no available remedy. The operative Complaint is against the Acting Director of the Department of Corrections in her official capacity and seeks compensatory damages, punitive damages, and injunctive relief. A claim for damages against the Acting Director in her official capacity is barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Brown also only seeks injunctive relief that requires the Department of Corrections to "offer Brown reasonable accommodations for his severe learning disabilities." Doc. [37]. The parties agree that Brown is currently enrolled in an adult basic education course, and Brown has not requested injunctive relief in the form of a policy change to the adult basic education program's waitlist. For all of the above reasons, the Court grants the Department's motion for summary judgment on Count III.

## Conclusion

For these reasons, Defendant's motion for summary judgment [108] is granted as to Count III and denied as to Counts I and II.

**SO ORDERED.**

Dated: September 16, 2024

_____
Sunil R. Harjani
United States District Judge